Curia advisare vult.

Tuesday, March 15, 1808. One of the reporters having, at the request of the Judges expressed at the last term, procured from the library at Monticello, a copy of the MS act “ for a free trade with Indians,” this day submitted it to the Court.
Judge Tucker
observed that he required no further argument. Three copies of the same act agreeing in every essential point, had been produced : One from the eastern shore j one from Northumberland; and another from Monticello. Nothing but a miracle, or their being genuine, could have produced such a coincidence.
Judges Roane and Fleming did not consider any further argument necessary.
Tuesday, March 22. The Judges delivered their opinions.
Judge Tucker.
The only question in these causes, is, whether the act of Assembly cited and relied on by me in Hudgins v. Wrights,(a) as having passed in the year 1691, is to be regarded as the law of the land, or not. -
*158 Mr. Hening', since that case happened, has procured from Mr. Evans, on the eastern shore, a copy of the act from the book which I had seen it in, and founded my opinion upon : and he has also procured from the clerk’s office of Northumberland, a volume of manuscript laws, apparently furnished for the use of the Court, with the name of the clerk of the General Assembly added thereto, as certifying them to be true copies ; and these acts are verbatim the same, except that the word “the” was omitted in the old book, which I first saw. Since the last term, Mr. Hening has been furnished with a copy of the same act taken from Mr. Jefferson’s MSS which agrees with the others, with the addition of the words “ at all,” repeated before the word “ places,” in the enacting clause of the first section, (corresponding verbatim with the enacting clause of the act of 1705,) and with the further unimportant variation of the particle “ a” instead of “ the” before the word “ license,” in the second section. I am therefore confirmed in my former opinion, that the act of 1691, is to be considered as the law of the land: and consequently that the judgment of the District Court is erroneous, and ought to be reversed.
Judge Roane.
Upon the first appearance of the manuscript volume of laws found in the clerk’s office of Northumberland County, bearing every mark of antiquity and authenticity, I had, privately, but little doubt that it was one of those copies which, at the period of its date, were furnished in manuscript for each county, and for which a fee of 300 lbs of tobacco is provided in the acts contained in the edition of Purvis, p. 104.
At that time, it appears by an examination of the old records of the Council, there were only about twenty or twenty-two counties in the colony; and it is admitted that there were then no printing presses in America, and that our laws, about that period, existed only in manuscript.
Considering the destruction naturally incident to books and papers of this kind during a period of one hundred and *159 eighteen years; and that, after these laws had undergone several revisáis, the owners of them, would in general be careless of their preservation, it could not reasonably be presumed that many copies (out of twenty-two) would still be found in existence. It has always been admitted that the original rolls themselves of the laws of this period have been destroyed by lire, or by the enemy.
As, however, this was but a single copy : as the act now in question was unknown to the Court of Appeals, and to the General Court, in the several cases in which this subject has heretofore been drawn in question ; and particularly, as its existence was unknown to our late venerable President, (Mr. Pendleton,) whose age and observation gave him great opportunities of information upon this subject; I was unwilling to decide the case, unless it were absolutely necessary, upon this single copy.
A perusal of President Jeeeersoh’s letter to Mr. Wythe, upon the subject of our ancient laws, sometime ago published in the Gazettes, inducing me to expect that this act would probably be corroborated and supported by another copy in the possession of the President, it occurred to me proper to request, (in which the Court readily acquiesced,) that a copy from the act in his possession should be obtained. The cause accordingly laid over until this term, and a copy has been obtained from the President, which is now before us. That copy precisely corresponds with the act in the MS copy obtained from Northumberland, except in the omission, in the latter, of two trivial and tautologous words : and precisely agrees with the act of 1705,(a) even in respect of those words. This circumstance entirely corresponds with the information said to have been received from the President, 'that his copy is believed to have been owned by one of the revisors, of our acts at some former period, and is supposed to Ixive been one of the very copies from which such revisal was made. The confirmation which is derived as to the authenticity of the first copy of the law, by the production of the latter, is further strengthened by the consideration, that the two *160 copies are understood to have been procured from different and distant parts of the country ; from whence the idea is excluded, that one of them could have been copied from the other.
I can therefore no longer doubt but that this act was passed by the Legislature in 1691: and as its enacting clause agrees precisely with the 12th section of the act of 1705, at which time our acts underwent a revisal, and therefore, the presumption is, that the clause then inserted was not a nexo clause, I am of opinion, that that clause was merely a continuation and re-enaction of the pre-existing law.
As to the objection that the Royal assent is not shewn to have been given to this act, it is answered, not only by the consideration that the records of those times were burnt, and none of the people of those times are living to supply an inferior kind of evidence upon this point; but also by the improbability that the legislature would have inserted in their revisal, an act which had not been duly perfected.
As to the objection of the want of promulgation of this act, it is true, that, latterly, it had sunk into oblivion, having been superseded and continued by a posterior act; but prior to the act of 1705, it was promulgated like all our other acts ; a copy was deposited in the clerk’s office of each County for the free perusal of the people. I am therefore of opinion, that the instruction of .the District Judge was erroneous, and ought to have conformed to the ideas now stated.
Judge Fleming
observed that the MS act of 1691 appeared to be so well authenticated that no doubt was left on his mind that it was the law of the land, and continued so from 1691, till it was re-enacted in the revisal of 1705.
The opinion of the Court was, that the judgment of the District Court was “ erroneous in this, in the Court’s re- “ fusing to instruct the Jury that no native American In* *161 " diem brought into Virginia since the year 1691, could,- “ under any circumstances, be lawfully made a slave, and “ in declaring the law to be otherwise.”
Judgment reversed, a new trial granted, with instructions conformably to the above opinion.

 1 Hening & Munford, 138.

 Ed. 1752, c. 52. sect; 12. p. 80.